TX 872 (Aransas Pass TX-1)



# FRANCHISE AGREEMENT

# EXHIBIT B



EXHIBIT
1
Bar Code No. 5203

Dockets.Justia.com

# TABLE OF CONTENTS

Section                                                                                      Page

1. Grant of Franchise ........................................................................................ 3

2. Term, Renewal and Buyback ........................................................................ 3

3. Territory ........................................................................................................ 3

4. Fees and Payments ...................................................................................... 4

5. Obligations of Franchiser ............................................................................. 5

6. Obligations of Franchisee ............................................................................ 6

7. Reports and Review ...................................................................................... 8

8. Termination ................................................................................................... 9

9. Post Termination Obligations ..................................................................... 10

10. Additional In-Term and Post-Term Covenants ......................................... 10

11. Independent Contractor ............................................................................. 11

12. Death or Incapacity .................................................................................... 12

13. Assignability ............................................................................................... 12

14. Non-Waiver of Breach ................................................................................ 13

15. Governing Law ........................................................................................... 13

16. Modification ................................................................................................ 14

17. Release of Prior Claims ............................................................................. 14

18. Notices ....................................................................................................... 14

19. Full Understanding ..................................................................................... 14

20. Acknowledgments ...................................................................................... 14

21. Guaranty .................................................................................................... 14

Schedule A – Territory .................................................................................... 17

Schedule B – Pre-Existing Client Exclusion .................................................. 18

Schedule C – Special Stipulations ................................................................. 19

## 1. GRANT OF FRANCHISE

Liberty Tax Service ("Liberty", "Franchiser", "we", "us", "our") has developed a system for the operation of tax return preparation offices. The Liberty system utilizes special marketing techniques and operating procedures to facilitate the provision of tax return preparation and related services.

You have applied for a franchise that utilizes our system and our Marks ("Franchised Business"). Subject to the terms of this franchise agreement ("Agreement"), we grant to you a Liberty Tax Service franchise. This Agreement will allow you to operate a tax return preparation business using our system and our Marks within the Territory described on Schedule A. You agree to abide by the terms of this Agreement.

You recognize and agree that the nature of the tax return preparation business is such that complete uniformity is not always practical or desirable and that we, in our sole discretion, may vary the terms of this Agreement and the standards of operation of the Franchised Business to accommodate the peculiarities of a particular situation and/or Territory. You have no recourse against us if other franchisees are granted allowances which you are not granted.

## 2. TERM, RENEWAL AND BUYBACK

**a. Term.** This Agreement will be effective for a five-year term beginning on the Effective Date specified in this Agreement.

**b. Renewal.** You may renew for another five-year term by signing our then current franchise agreement if you have met the target volumes specified in Paragraph 6 and are otherwise in compliance with this Agreement. You may also renew future franchise agreements if you are in compliance with such agreements and meet the other conditions therein for renewal by signing our then current franchise agreement. There is no fee for renewals, however you must exercise a general release of all claims that you might have against us. Royalties and advertising fees will not be raised upon renewals. Other terms and conditions may vary. If you wish to renew, you must notify us in writing at least 180 days before the expiration of this Agreement.

**c.     Buyback.** Any year between May 1st and June 30th, we have the right, in our sole discretion, to purchase your Franchised Business for the greater of $150,000 or 200% of Gross Receipts of the Territory for the previous twelve months, or such shorter time as an office in the Territory may have been in operation. The term "Gross Receipts" as used in this Agreement means all revenue from all services and products offered by the Franchised Business (including but not limited to revenue from individual, corporate, estate and partnership tax returns), excluding only customer discounts and sales tax, but not service fees for credit card transactions.

## 3. TERRITORY

Your Territory is described in Schedule A of this Agreement ("Territory"). You may operate as many tax return preparation offices in the Territory as you determine to be appropriate.

You may not operate outside your Territory. We may grant franchises for areas outside your Territory or operate company stores in such areas. We may operate company stores and grant franchises in your Territory which operate a different line of business. We may distribute Liberty tax return preparation products and services by means other than retail or storefront locations in your Territory. No other franchisee using the Marks granted hereunder may operate a tax return preparation office in your Territory. We may advertise in your Territory. You may not advertise in areas outside your Territory, or in media which extend outside your Territory, without our express written approval.

In the event that you locate an office outside your Territory as a result of incorrect address information from a landlord or otherwise, even if we approved such site location, you agree upon discovery of such error to promptly abandon such office and refrain from any further targeted solicitation (e.g., direct mail, telephone call, etc.) of customers residing in the territory containing the misplaced office. Likewise, if we learn that we or another franchisee has erroneously located an office in your Territory, you agree to accept the abandonment of such office and the refrain by the franchisee who erroneously located the office in your Territory from any further targeted solicitation of customers located in your Territory, in full satisfaction of any claim against us, our past and present employees, and our past and present franchisees, in relation to the misplaced office. We have a reasonable time to correct any such error after we learn of it. No person or entity is a third-party beneficiary of this paragraph.

We may negotiate agreements with national or regional retail businesses. If there is an outlet of such a national or regional account in your Territory, you may choose to operate a tax return preparation service office in that outlet by communicating such decision to us by January 1 before a given Tax Season. In the event that you choose not to operate in an outlet which exists in your Territory, we may operate in that outlet in your Territory. If we do so, all associated revenue and expenses are ours, along with the future right to service such customers. The term "Tax Season" as used in this Agreement means January 2 through April 30.

## 4. FEES AND PAYMENTS

a. **Initial Franchise Fee.** The initial franchise fee is $20,000 per undeveloped territory through November 30, 2002, and $25,000 thereafter. Territories with existing operations (developed territories) cost more. The cost for territories with existing operations varies depending upon the Gross Receipts of the Territory and other pertinent market and economic factors.

b. **Approval.** We have 10 days from the date you complete our Effective Operations training to decide whether or not you have passed our training class and in our opinion this opportunity would be right for you. Should we deem this opportunity not appropriate for you, upon your returning to us all materials you received in training, we will refund any initial franchise fee paid.

c. **Initial Advertising Fee.** We recommend that you invest at least $5,000 in the advertising and marketing of the Franchised Business in the Territory during the first Tax Season.

d. **Royalties.**

(i) For a new, undeveloped Territory:

(a) For the period ending April 30th following the Effective Date of this Franchise Agreement ("Year One"), you must pay a royalty of $5,000 per Territory for Year One.

(b) For the period beginning May 1 following the Effective Date of this Franchise Agreement through the following April 30th ("Year Two"), you must pay a royalty of $8,000 per Territory for Year Two.

(c) Thereafter, you must pay a royalty of 14% of the Gross Receipts of your Franchised Business. In the event that the royalty owed for any given Tax Season is less than $11,000 per Territory, you must pay additional royalty such that the Minimum Royalty for the period totals $11,000 per Territory.

(ii) For a developed Territory, meaning one containing an existing company, franchisee or other Liberty tax preparation office, you must pay a royalty of 14% of the Gross Receipts of your

Franchised Business. In the event that the royalty owed for the Tax Season is less than $11,000 per Territory, you must pay additional royalty such that the Minimum Royalty for the period totals $11,000 per Territory.

**e. Advertising.** You must pay an advertising fee of 5% of the Gross Receipts of your Franchised Business each month. Also, in selected geographic areas, we may offer you the opportunity to voluntarily join and contribute to a supplemental or group advertising program.

**f. Payment Period.** During Year One and Year Two of a new Territory, you must pay the Royalties on February 20th of each year. After Year Two, and for a developed Territory, you must pay the royalty owed by the 5th of each month based on Gross Receipts for the preceding month, and any balance owed to achieve Minimum Royalty on May 5 for each fiscal year ending April 30th. You must pay advertising fees by the 5th of each month based on Gross Receipts for the preceding month. We reserve the right to modify this payment schedule in the Manual.

**g. Interest.** You must pay interest of 18% (compounded daily) per year, or the maximum permitted by law, if less, on any amounts owed to us that are more than 15 days past due.

**h. Transfer Fee.** In the event that you transfer your Franchised Business, you must pay us a fee of $2,500 at the time of transfer. This fee is subject to increase or decrease in future franchise agreements by the amount of change in the Consumer Price Index – All Urban Consumers, published by the U.S. Department of Labor, or a reasonably similar successor index.

## 5. OBLIGATIONS OF FRANCHISER

**a. Training.** We provide a minimum five-day Effective Operations Training which is required of new franchisees. We do not charge for Effective Operations Training but you are responsible for all expenses you incur as a result of training, such as travel, lodging and entertainment.

**b. Operations Manual.** We will loan you a copy of our Operations Manual to offer guidance in the operation of your Franchised Business.

**c. Site Selection.** We provide guidance and advice to you regarding the selection of the location of your office(s). You may not sign a lease or locate an office until we approve the location of your office. Our approval of the location of a site is not a guarantee of success in that location or a warranty or assurance as to any aspect of the office or its location.

**d. Advertising and Marketing.** We raise fees related to marketing through the advertising fees paid under our franchise agreements. We will contribute advertising fees from company stores. We disburse advertising fees to develop, produce, distribute and/or conduct advertising programs, marketing programs, public relations, and marketing research. We spend advertising fees on a national, regional or local basis for television, electronic, radio and print advertising as we determine to be appropriate. We may produce advertising in-house and/or through an advertising agency. We pay all costs of such activities, including a share of corporate overhead related to advertising and marketing, with advertising fees. You may also use your own advertising material provided that we first approve it for compliance with our specifications for advertising and use of our Marks.

**e. Software.** We will provide or recommend a source for tax return preparation software.

**f. Tax and Software Support.** We will provide reasonable telephone and/or internet support for your questions regarding tax preparation and use of software specified by us during normal business hours. However, we will not provide software support or technical assistance on any equipment which does not meet our then current specifications or which relates to the operating system of the computer.

**g. Electronic Filing.** We will provide the ability to file individual federal and some state tax returns, electronically, provided that such method of filing is reasonably available from the respective taxing authority. You must have a valid EFIN to take advantage of electronic filing.

**h. Bank Products.** If reasonably available and feasible, we will offer a refund anticipation loan program and/or a means to obtain a quicker refund using electronic filing (collectively "Bank Products"). Your participation in Bank Products, if we offer them, is subject to a mutual agreement being reached between you, us and the providing lender.

**i. Operational Support.** We will advise you in the budgeting for and operation of your franchise.

**j. Advanced Training.** We will provide a one to two day advanced training forum for experienced franchisees. To attend advanced training, you must have completed the Effective Operations training course and at least one Tax Season. Advanced training is held at various sites which we select across the country. The agenda for advanced training varies but often focuses on improving business management skills in order to increase profitability. We do not charge for this training but you are responsible for all expenses that you incur as a result of attending training, such as travel, lodging and entertainment.

**k. Supply Source.** We will offer for sale or locate a source for purchasing supplies, forms and equipment that may be necessary to conduct the Franchised Business, as reasonably determined by us from time to time.

**l. Leasing.** We may make arrangements to offer a leasing program which will offer an opportunity for leasing standard signs, furniture and equipment. The leasing program, if offered, will be financed and administered by a third party. We cannot guarantee that you will be offered leasing, as the third party leasing company will make individual determinations. If leasing is available pursuant to third party agreements, you may lease only those items from the third party which we indicate as eligible for leasing.

**m. Financing.** We may, in our sole discretion, provide financing for a portion of the initial franchise fee or other costs associated with the franchise. The terms of such financing are subject to change. You must be in compliance with this Agreement to qualify for any such financing. If we provide financing for you, all of the revenue that you are to receive from bank products shall initially be paid directly to us, rather than to you, and we may deduct amounts that you owe to us before remitting the balance to you.

**n. Group Discounts.** From time to time we may provide you with the opportunity to participate in group purchasing programs which offer group discounts. The discounts and terms for any such opportunities will vary.

## 6. OBLIGATIONS OF FRANCHISEE

**a. Training.** You must attend and successfully complete our Effective Operations training before you may operate a Liberty office. We may allow or require a general manager to attend on your behalf.

**b. Use of Liberty Marks.** You agree to use the Liberty trade names, service marks and trademarks (collectively, the "Marks") as we develop them. You agree to obtain our prior written consent before

using the Marks in any way. For example, you must obtain our approval prior to using the Marks in advertising or marketing, including any web site or e-mail address. You may not use the word "Liberty" or "Libtax" as any part of the name of an entity which owns this franchise. You may not maintain a web site or any Internet advertising in connection with the Franchised Business or the Marks without our prior written approval. You agree not to use any marks which could be confused with the Marks. We may replace, modify or add to the Marks. In the event that we replace, modify or add additional marks, you agree to update or replace yours signs, supplies, etc. to reflect the new marks, at your expense, in the time frame we provide at the time of such an update. We will not change exterior signage requirements, although we may change options or recommendations, more than once every four years, at the most, absent a legal requirement to do so.

c. **Signs.** You must display an exterior lighted sign as approved by us at each of your offices. We must approve all your signs before you order or display them.

d. **Starting Date.** You agree to begin operations and be open for business no later than the January 8th following the Effective Date of this Agreement.

e. **Operating Hours.** You agree to be open for business during the following hours, or such other hours as we may specify in the Operations Manual:

| January 8th - April 16th | Monday – Friday<br>Saturday | 9:00 a.m. - 9:00 p.m.<br>9:00 a.m. - 5:00 p.m. |
|---|---|---|
| April 17th - January 7th | Eight hours per week between the hours of:<br>Monday - Friday<br>Saturday | <br>9:00 a.m. - 9:00 p.m.<br>9:00 a.m. - 5:00 p.m. |

During the period from April 17th through January 7th, your office hours must be held on the same day and at the same time each week.

f. **Target Volume.** You must use your best efforts to promote the Franchised Business. Beginning in your fourth Tax Season and during each Tax Season after your fourth Tax Season, you must prepare at least 1000 federal income tax returns in your Territory.

g. **Software.** You must use the software that we provide or recommend.

h. **Telephone Number.** You must obtain and maintain a Liberty Tax Service telephone number, white and yellow page telephone number listing, and may be required to purchase a yellow page advertisement and/or contribute to a group listing or advertisement per our recommendations.

i. **Equipment.** You must obtain and use a computer system which meets our then current specifications. We may update the specifications. When the specifications are updated, you must either obtain or upgrade a computer system such that your equipment meets our then current specifications. Specifications will not be updated during Tax Season except upon an emergency as reasonably determined by us.

j. **Insurance.** During the term of this Agreement, you must procure and maintain an insurance policy or policies with at least the following coverage, or such other coverage as may be specified in the Operations Manual:

| Comprehensive General Liability | $1 million |
|---|---|
| Worker's Compensation | as required by your state law |

You must name us as additional insured on these policies.

**k. Electronic Filing.** In the event that we provide or recommend a source for electronically filing tax returns, you are required to use this source exclusively for all electronic filing.

**l. Bank Products.** In the event that we negotiate an agreement with a third party lender, you are required to use such lender exclusively to provide Bank Products to your customers.

**m. Operations Manual.** We will loan you a copy of the Operations Manual. The Operations Manual is a detailed extension of this Franchise Agreement which covers standards to be maintained, operating procedures and other information. We may modify the Operations Manual during the term of this Agreement. You agree to be bound by the Operations Manual and future modification of it. You must operate the Franchised Business according to the then current Operations Manual.

**n. Participation.** You agree that franchise services will be provided under your direct supervision and control and/or under the direct supervision and control of a full time general manager who has been approved by, and not later disapproved by us. We will not approve a general manager prior to their successful completion of the Effective Operations training.

**o. Return Check.** You must prepare each income tax return accurately and in accordance with federal, state and local laws. You must check each return thoroughly.

**p. Tax School.**

   (i) If you complete Effective Operations Training before September 1 of the year of the Effective Date of this Agreement, and in any event during every year after your first Tax Season, you must conduct an intensive 6 to 12 week tax course in the period of September through December in accordance with the specifications in our Operations Manual.

   (ii) You must also conduct a one-week course during every January, including the January of your first Tax Season, in accordance with the specifications in our Operations Manual.

**q. Employee Training.** You shall conduct and require each of your employees to attend an employee policy and procedure training course as specified by us. You are solely responsible for hiring, firing, compensating, paying applicable payroll taxes and day to day supervision and control over your employees.

**r. Customer Service.** You shall employ and train sufficient personnel to accommodate all customers without undue delay. You shall provide all services and abide by all customer service policies described in the Operations Manual, including, but not limited to, the money back guarantee.

**s. Office Condition.** You shall maintain offices that are neat and professional in appearance.

**t. Supplies and Furniture.** You agree that in order to establish a standard and consistent delivery of Liberty services, certain items must be used in the operation of the franchise. You must use the items set forth as required in the Operations Manual (e.g., client envelopes and folders, interview worksheets, interior sign sets). You are responsible for the cost of all supplies, furniture, equipment and other items which may be necessary to conduct the Franchised Business.

**u. Laws and Regulations.** You agree to comply with all federal, state and local laws and regulations. You will secure all necessary permits, certificates, licenses and consents to operate your business.

v.  **Limitation of Services.** During the term of this Agreement, you agree not to engage in any business other than the Franchised Business without the prior written consent of Liberty.

## 7. REPORTS AND REVIEW

a.  **Gross Receipt Report.** You must send us a Gross Receipt report in the manner, form and times we specify. Presently, you must report your Gross Receipts on the 5th of the month for Gross Receipts received during the prior month.

b.  **Profit and Loss.** By May 10th of each year, you must send us an unaudited profit and loss statement, in the manner and form we specify, for the 12-month period ending April 30th.

c.  **Review.** We have the right to review, inspect and copy, during normal business hours, all of your business records related to the Franchised Business, including tax returns and bank statements, showing revenues from the Franchised Business.

d.  **Mail Reviews.** If we request a copy of your customer receipts (paper and/or electronic) or any other business records related to the Franchised Business, you must send us at your expense these records within 5 days of receiving our request.

e.  **Electronic Review.** We may cause programs to run on your computer systems that may send information to us. We agree that the use of such programs will not unreasonably interfere with your operation of the Franchised Business and you agree to allow such programs to run without interference by you.

## 8. TERMINATION

a.  You may terminate this Agreement by not renewing; that is by not sending us a written notice of your desire to renew within 180 days of the expiration of the Agreement. If you terminate pursuant to this paragraph, you must still comply with all of the post termination provisions of this Agreement.

b.  We may terminate this Agreement without notice and the opportunity to cure for any of the following:

(i)  If you become insolvent or take any steps to seek protection from creditors, or if a receiver (permanent or temporary) is appointed by a creditor or a court of competent authority or if you make a general assignment for the benefit of creditors;

(ii)  If a final judgment of record against you or your Franchised Business remains unsatisfied for 30 days or longer;

(iii)  If you commit a material violation of any law, ordinance, rule or regulation of a governmental agency or department reasonably associated with the operation of the Franchised Business;

(iv)  If you discontinue the active operation of the Franchised Business in the Territory for three business days during Tax Season or seven business days otherwise;

(v)  If you fail to open for business in the Territory by January 8th of any year;

(vi)  If you operate any offices or advertise outside the Territory without our permission;

(vii) If you fail to prepare in the Territory 1000 or more federal income tax returns during your fourth Tax Season and each Tax Season thereafter;

(viii) If you fail to use in the Territory the software, electronic filing services or Bank Products we provide or recommend;

(ix) If you do not obtain an EFIN from the IRS for each office in the Territory by January 8th of each year or if any of such EFINs are suspended for any reason; or

(x) If you commit three or more breaches of this Agreement, the Operations Manual, or any other agreement (including promissory notes) with us, in any 12 month period regardless of whether such breaches were cured after notice.

c.  We may terminate this Agreement, after sending you notice and an opportunity to cure within seven days, if:

(i)  you violate any other term or condition of this Agreement, the Operations Manual, or any other agreement related to the Territory; or

(ii)  any amount owing to us, whether related to the Territory or not, is more than 30 days past due;

(ii)  you fail to submit required reports or other information as provided herein, or if you make any false submission in connection therewith.

## 9. POST TERMINATION OBLIGATIONS

In the event that this Agreement expires, is not renewed or is terminated for any reason by any party, including a sale of the Franchised Business, you must immediately:

a.  Remove all Liberty signs from all of your offices and other premises; and

b.  Stop identifying yourself as a Liberty Tax franchisee, never hold out as a former Liberty Tax franchisee and cease, and not thereafter commence, use of any of the Marks or any marks which are likely to be confused with the Marks; and

c.  Stop using all literature received from us and other items bearing the Marks; and

d.  Pay to us all amounts owing to us; and

e.  Transfer to us all telephone numbers, listings and advertisements used in relation to the Franchised Business and deliver to us copies of such documents of transfer; and

f.  Deliver to us all copies, including electronic copies, of lists and other sources of information containing the names of customers who patronized the Franchised Business; and

g.  Deliver to us all customer tax returns, files, records and all copies thereof; and

h.  Deliver to us the copy of the Operations Manual and all updates which we loan to you; and

i.  Cancel all fictitious name listings which you have filed for use of any of the Marks; and

j. Adhere to the provisions of the post-term covenants not to compete and not to solicit and any other covenant herein that requires performance by you after you are no longer a franchisee.

## 10. ADDITIONAL IN-TERM AND POST-TERM COVENANTS

a. **In-Term Covenant Not to Compete.** During the term of this Agreement, you agree not to directly or indirectly, prepare or electronically file income tax returns, or offer Bank Products, except in your capacity as a Liberty Tax Service franchisee using the Liberty Tax Service system to offer such products and services.

b. **Post-Term Covenant Not to Compete.** You agree that for a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, you agree not to directly or indirectly prepare or electronically file income tax returns, or offer Bank Products, within the Territory or within twenty-five miles of the boundaries of the Territory granted by this Agreement.

c. In the event that you fail to comply with either of the above covenants not to compete, you agree to pay to us, as a genuine pre-estimate of liquidated damages, royalties and advertising amounts as set forth in Paragraph 4 of this Agreement with respect to those revenues derived by you and those associated with you from preparation of tax returns, electronic filing, Bank Products and related services within the area specified in the covenant not to compete. Such payments will continue for two (2) years or for the balance of the then existing term of this Agreement, whichever is greater. The parties expressly acknowledge and agree that such payments shall not affect any rights or remedies we may have, at law or in equity, against you by reason of such non-compliance, including the right to seek injunctive relief.

d. **Covenant Not to Solicit.** You agree that for a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, you will not within the Territory or within 25 miles of the boundaries of the Territory, directly or indirectly, solicit the patronage of any person or entity served by any of your prior Liberty offices in the last 12 months that you were a Liberty franchisee, or such shorter time as you were a Liberty franchisee, for the purpose of offering such person or entity income tax preparation, electronic filing of tax returns, or Bank Products.

e. You agree not to disparage Liberty or its current and former employees or directors.

f. You also agree that you will never, directly or indirectly, during or after the term of this Agreement, divulge to or use for the benefit of any person or entity outside of the Liberty Tax Service system, any information contained in our Operations Manual, any information concerning customers served by your Franchised Business, any information related to marketing, or any other systems or methods of operation of Liberty's business or that of Liberty's franchisees. You agree not to do any act prejudicial or injurious to the goodwill or name of Liberty. Information furnished to your employees shall be reasonably limited to that which directly relates to and assists in the proper performance of such employee's duties.

g. You hereby acknowledge that the qualifications to be a Liberty franchise are special, unique and extraordinary, and that this Agreement would not be entered into by Liberty except upon condition that such covenants be embodied herein.

h. You acknowledge and agree that the provisions of this Paragraph are reasonable, valid and not contrary to the public interest and all defenses to the strict enforcement thereof by us are waived.

i. All of the covenants contained in this Paragraph shall survive any termination or expiration of this Agreement.

j.  If any covenant or provision herein is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and not to affect or impair the validity of any other covenant or provision of this Paragraph.

## 11. INDEPENDENT CONTRACTOR

You are an independent contractor.  You are not our agent, partner, employee, or a participant in a joint venture and have no authority to hold out as such to third parties.  You do not have any authority to bind or obligate us.  We are not and will not be liable for any act, omission, debt, or other obligation of yours.

You are responsible for all loss or damage and for all contractual liability to third parties originating in or in connection with the operation of the Franchised Business and for all claims or demands for damage directly or indirectly related thereto.  You agree to defend, indemnify and hold harmless Liberty and its employees of and from and with respect to any such claim, loss or damage.

## 12. DEATH OR INCAPACITY

In the event of the death or incapacity of Franchisee, we are entitled, but not required, to render whatever assistance is required to maintain smooth and continued operation of the Franchised Business.  We shall be entitled to reimbursement from Franchisee or Franchisee's estate for any reasonable expenditures thus incurred.  Death or incapacity shall not of itself be grounds for termination of this Agreement unless either-

a.  Franchisee or his/her legal representative fails for a period of 180 days after such death or incapacity to commence action to assign this Agreement according to the terms of this Agreement; or,

b.  Such assignment is not completed within one year after death or incapacity.

If such action or assignment is not timely taken or made as aforesaid, Liberty shall have the right to terminate this Agreement.  Further, the terms and conditions of paragraph 13 below apply to a transfer upon death or incapacity.

## 13. ASSIGNABILITY

We may assign this Agreement to an assignee who agrees to remain bound by its terms.  We do not permit a sub-license of the Franchise.  Your interest under this Agreement or your ownership in the Franchise may be transferred or assigned only if you comply with the following provisions.  No interest may be transferred unless or until you are in full compliance with this Agreement.

a.  If you have received and desire to accept a signed, bona fide offer to purchase or otherwise transfer the Franchise or any interest in the Franchisee, you shall grant Liberty the option (the "Right of First Refusal") to purchase such Franchise or interest as hereinafter provided.

b.  A transfer to a "Controlled Entity" shall not trigger the Right of First Refusal.  A "Controlled Entity" is an entity in which Franchisee is the beneficial owner of 100% of each class of voting ownership interest.  At the time of the desired transfer of interest to a Controlled Entity, you must notify us in writing of the name of the Controlled Entity and the name and address of each officer, director, shareholder, member, partner, or similar person and their respective ownership interest.  Each such person of the Controlled Entity shall sign the then current amendment forms and/or franchise agreement as required by us.  We do not charge a transfer fee for this change.

c.  A transfer of interest within a Franchisee which is an entity shall not trigger the Right of First Refusal provided that only the percentage ownership, rather than the identity of the owners, is changing.

At the time of the desired transfer of interest within an entity, you must notify us in writing of the name and address of each officer, director shareholder, member, partner or similar person and their respective ownership interest. Each such person of the Controlled Entity shall sign the then current amendment forms and/or franchise agreement as required by us. We do not charge a transfer fee for this change.

d. You shall offer the Right of First Refusal to Liberty by notice in writing, including a copy of the signed offer to purchase which you received ("Notice"). We shall have the right to purchase the Franchise or interest in the Franchisee at and for the price and upon the terms set out in the Notice, except that we may substitute cash for any non-cash form of payment proposed and we shall have 60 days after the exercise of our Right of First Refusal to close the said purchase. Should we wish to exercise our Right of First Refusal, we will notify you in writing within 15 days from its receipt of the Notice. Upon the giving of such notice by us, there shall immediately arise between Liberty and Franchisee, or its owners, a binding contract of purchase and sale at the price and upon the terms contained in the Notice.

e. If we do not exercise our Rights of First Refusal, you may transfer the Franchise or ownership interest therein according to the terms set forth in the Notice, provided that you satisfy the conditions in sub-parts (f) through (i) below and complete the sale within 90 days from the day on which Liberty received the Notice. If you do not conclude the proposed sale transaction within the 90-day period, the Right of First Refusal granted to Liberty hereunder shall continue in full force and effect.

f. The proposed transferee(s) must complete our then current Liberty franchise application and pass our application screening using our then current qualifications.

g. The proposed transferee(s) must sign the then current Liberty amendment forms and/or franchise agreement, as required by us, and must personally assume and be bound by all of the terms, covenants and conditions therein.

h. The proposed transferee(s) must attend and successfully complete our Effective Operations training.

i. You shall sign our then current transfer and release forms and pay to us a transfer fee of Two Thousand Five Hundred Dollars ($2,500.00).

## 14. NON-WAIVER OF BREACH

The failure of either party hereto to enforce any one or more of the terms or conditions of this Agreement shall not be deemed a waiver of such terms or conditions or of either party's rights thereafter to enforce each and every term and condition of this Agreement.

## 15. GOVERNING LAW

a. **Virginia Law.** This Agreement is effective upon its acceptance in Virginia by our authorized officer. Virginia law governs all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto. However, the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the Territory shown on Schedule A below is located outside of Virginia.

b. **Jurisdiction and Venue.** In any suit brought by us, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, you consent to venue and personal jurisdiction in the state and federal court of the city or county of our National Office, presently Virginia Beach state courts and the United States District Court in Norfolk, Virginia. In any suit brought against us, including our present and former employees and agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal court located nearest our National Office (presently the U.S. District in Norfolk, Virginia), or if neither federal

subject matter or diversity jurisdiction exists, in the city or county state court located where our National Office is (presently the City of Virginia Beach, Virginia).

   c. **Jury Waiver.** In any trial between any of the parties hereto, including present and former employees and agents of ours, you and we agree to waive our rights to a jury trial and instead have such action tried by a judge.

   d. **Class Action Waiver.** You agree that any claim you may have against us, including our past and present employees and agents, shall be brought individually and you shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against us.

   e. **Compensatory Damages.** In any lawsuit, dispute or claim between or against any of the parties hereto, including present and former agents and employees of ours, you and we agree to waive our rights, if any, to seek or recover punitive damages.

## 16. MODIFICATION

No modifications to this Agreement will have any effect unless such modification is in writing and signed by you and by our authorized officer. Notwithstanding the foregoing, we may modify the provisions of the Operations Manual, without your consent, at anytime during the term of this Agreement in order to adjust for competitive changes, technological advancements, legal requirements and attempts to improve in the market place.

## 17. RELEASE OF PRIOR CLAIMS

By executing this Agreement, the undersigned entity, if any, and individuals, on behalf of yourselves and your heirs, legal representatives, successors and assigns, and each assignee of this Agreement, hereby forever release and discharge Liberty, its past and present employees, agents, officers and directors, including Liberty's parent, subsidiary and affiliated corporations, their respective past and present employees, agents, officers and directors, from any and all claims relating to or arising out of any franchise agreement between the parties executed prior to the date of this Agreement, and all other claims relating to any dealings between any of the parties. However, this release does not apply to our renewal obligations the same or similar to those in paragraph 2b. above, as contained in any prior or other franchise agreement.

## 18. NOTICES

Any notice or request hereunder shall be given by mail or courier, postage fully prepaid, or delivered personally or by facsimile, to our CEO, at our National Office, presently 4575 Bonney Road, Virginia Beach, VA 23462. Telephone: (757) 493-8855 Telecopier: (757) 493-0169. Any such notice may also be given to you in the same manner at the address indicated below the Franchisee's signature on this Agreement.

## 19. FULL UNDERSTANDING

This Agreement is the entire agreement between you and us. This Agreement supersedes all other prior oral and written agreements and understandings between you and us with respect to the subject matter herein.

## 20. ACKNOWLEDGMENTS

You acknowledge that you have read our franchise offering circular and this Agreement and that you have been given the opportunity to clarify any provision that you do not understand. You further acknowledge

that you have independently investigated the business offered hereunder and base your decision to purchase solely on such investigation. Except as may be stated in Item 19 of our Offering Circular, you acknowledge that our Franchise Sales Representatives are not authorized to make and have not made any representations as to your likely revenues, expenses, profits or success.

## 21. GUARANTY

The franchisee below, and if it is an entity, all its officers, directors, partners, and members, agree to perform all the obligations in and relating to this Agreement, including, but not limited to, the obligation to make payments specified herein, pay any other debts due to us, and pay for products later ordered from us. Likewise, for and in consideration of this Agreement, the signatures of the individual(s) below also constitute their personal joint and several guaranty to perform all the obligations in and relating to this Agreement, including, but not limited to, the obligation to make payments specified herein, pay any other debts due to us, and pay for products later ordered from us. The Guarantors waive presentment, demand or notice of non-performance and the right to require us to proceed against the other Guarantors.

Name of Franchisee: _Nien Thu Van_

Type of Entity (Sole Proprietor, Partnership, Corp., LLC): _Sole Proprietor_

Effective Date: _DEC 1 2 2002_    Entity Number: _2747_

**GUARANTORS:**

By: _____
(Signature)

_NIEN THI VAN_
(Printed Name)

Title: _OWNER_

Address: _1514 Wildcat Dr._
_Portland TX 78374_

_361-215-9622_
(Telephone Number)

Percentage of Ownership (if entity): _____ %

By: _____
(Signature)

_____
(Printed Name)

Title: _____

Address: _____

_____

_____
(Telephone Number)

Percentage of Ownership (if entity): _____ %

---

By: _____
(Signature)

_____
(Printed Name)

Title: _____

Address: _____

_____
(Telephone Number)

Percentage of Ownership (if entity): _____ %

By: _____
(Signature)

_____
(Printed Name)

Title: _____

Address: _____

_____

_____
(Telephone Number)

Percentage of Ownership (if entity): _____ %

---

**LIBERTY TAX SERVICE**

By: _____
John T. Hewitt, President/CEO

Date: _DEC 1 2 2002_

## SCHEDULE "A" TO THE FRANCHISE AGREEMENT

### Territory

The Franchise Territory* is as follows:


TX272 (AransasPassTX-1)

SOUTHEAST of and excuding FM-1069 from W Main St to FM-188.
SOUTHWEST of and excluding FM-188 from FM-1069 to the Corpus Christi Bay.
NORTHWEST of and including the Corpus Christi Bay from FM-188 to Edwards Rd.
EAST of and including Edwards Rd from the Corpus Christi Bay to W Main St.
SOUTHWEST of and excluding W Main St from Edwards Rd to FM-1069.

*Note: When a Territory description includes a road, avenue, street, parkway, highway, route or similar roadway, such Territory includes the U.S. Postal addresses assigned to either side of such roadway. When a Territory description excludes a road, avenue, street, parkway, highway, route or similar roadway, such Territory excludes the U.S. Postal addresses assigned to either side of such roadway. If a map of the Territory is attached, such map approximates your Territory, but the above legal description controls as to the Territory's precise boundaries.



© 2001 Microsoft Corp. All rights reserved.